**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

                           Case. No. 3:09-cv-814-J-34JRK

vs.

$1,761 IN U.S. CURRENCY,
$8,047 IN U.S. CURRENCY,
and
a 2004 MERCEDES CLK 320,
VIN WDBTJ65JX4F094579,

       Defendants.

_____/

## <u>ORDER</u>

    **THIS CAUSE** is before the Court on Plaintiff's Motion for Summary Judgment (Doc.

No. 23; Motion) filed on February 2, 2011.  The United States of America (United States)

initiated the instant action on July 29, 2009, by filing the Verified Complaint for Forfeiture <u>In</u>

<u>Rem</u> (Doc. No. 1; Complaint).  In the Complaint, the United States seeks forfeiture of $1,761

in U.S. currency and $8,047 in U.S. currency (collectively Defendant Currency), pursuant

to 21 U.S.C. § 881(a)(6), which provides for forfeiture of all moneys "furnished or intended

to be furnished by any person in exchange for a controlled substance or listed chemical" and

"all proceeds traceable to such an exchange."  <u>See</u> Complaint at 1; 21 U.S.C. § 881(a)(6).

In addition, the United States seeks the forfeiture of a 2004 Mercedes CLK 320, VIN WDBT

J65JX4F094579 (Defendant Vehicle), pursuant to 21 U.S.C. § 881(a)(4), which provides for

forfeiture of all vehicles, "which are used, or are intended for use, to transport, or in any

manner to facilitate the transportation, sale, receipt, possession, or concealment of

[controlled substances]." <u>See</u> Complaint at 2; 21 U.S.C. § 881(a)(4).  In the Complaint, the United States contends that the Defendant Currency is subject to forfeiture because it constitutes money used by Claimant Leonard Leroy White (White) "in an exchange for a controlled substance in violation of the Controlled Substances Act; . . . proceeds traceable to such an exchange; and[/or] . . . money used to facilitate such a violation."  Complaint at 5.  Moreover, the United States asserts that the Defendant Vehicle is subject to forfeiture because it was "used, or intended to be used, to transport or to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance."  <u>Id.</u>

On September 10, 2009, White filed a claim to the Defendant Currency and the Defendant Vehicle (collectively Subject Property).  <u>See</u> Verified Claim (Doc. No. 10; Claim) at 1-2.  In the Claim, White asserts that he purchased the Defendant Vehicle with "legitimate monies received by [White] as a result of an automobile accident that occurred on January 2, 2008."  Claim at 1.  White further contends that the Defendant Currency is money that White received from the accident settlement and that it was "not used or involved in violation of the Control [sic] Substance [sic] Act."  <u>Id.</u> at 2.  In addition, in the Answer of Leonard Leroy White (Doc. No. 11; Answer), White states that the Defendant Vehicle "was not used in the commission of, or violation of, the narcotics laws and should not be subject to forfeiture."  Answer at 1.  White also asserts that the Defendant Currency was "not obtained from or used in the commission of, or violation of, the narcotics laws and w[as] otherwise monies received as a result of compensation for damages in an automobile accident."  <u>Id.</u>

The United States filed the instant Motion on February 2, 2011, requesting that the Court: (1) grant summary judgment in its favor on its claim that the Subject Property is subject to forfeiture; and (2) deny White's claim to the Subject Property. See Motion at 23. White has not filed a response to the Motion. Accordingly, the Motion is unopposed.

On March 28, 2011, the Court referred this matter to the Honorable James R. Klindt, United States Magistrate Judge, for an appropriate resolution of the Motion. See Order of Referral (Doc. No. 28). Thereafter, on May 27, 2011, Magistrate Judge Klindt entered a Report and Recommendation (Doc. No. 29; Report) on the Motion. In the Report, Judge Klindt recommends that the Motion be granted. See Report at 23. Although Judge Klindt advised the parties of their right to file objections to the Report, neither party has filed any objections and the time for doing so has passed. See Report at n.1. Accordingly, this matter is ripe for resolution.

## I.    Standard of Review

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). However, the district court must review legal conclusions de novo. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at * 1 (M.D. Fla. May 14, 2007).

## II.     Factual Background[1]

Beginning on July 29, 2007, White worked as a commercial driver for a company called North Florida Sales.  See Deposition of Leonard L. White (Exh. A to Motion, Doc. No. 23-1; White Depo.) at 12.[2]  On January 2, 2008, he was in a car accident in which he sustained injuries including a broken leg.  See id. at 13-15.  As a settlement for his injuries, White received a total of $85,000 from Geico Indemnity Company, USAA Automobile Insurance Company, and State Farm Insurance Company.  See Claim at 1; Release of All Claims (Doc. No. 10-3; Geico Release) at 1-3; Release of All Claims (Doc. No. 10-4 at 1; USAA Release) at 1; State Farm Insurance Companies Letter (Doc. No. 10-4 at 2-3; State Farm Letter) at 2-3.  When White first received the settlement checks, he cashed them, and "set on [the cash] for a few days and admired it."  White Depo. at 76.  Then, on February 27, 2008, White purchased the Defendant Vehicle for $27,000 with funds that he received from the accident settlement.  See id.; Claim at 2; Vehicle Invoice (Doc. No. 10-2) at 1.  He put the rest of the settlement money in the safe he kept in his house.  See White Depo. at 77.  Thereafter, he put some of the settlement money into a bank account.  See id. at 80.

Following the accident, White was not able to return to work because of his broken leg.  See id. at 13-14.  Thus, he received $1,200 per month in disability payments.  See id.

---

[1]      The Court sets forth these facts as a supplement to the Report's recitation of the Facts, Report at 6-11, to provide context for the Court's analysis of the legal issues raised by the Report.  As discussed below, because this case is before the Court on the United States' motion for summary judgment, the facts recited herein and all reasonable inferences therefrom have been viewed in a light most favorable to White. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

[2]      The Court's page number references in relation to White's deposition correspond with the original page numbers in the deposition transcript rather than the numbers assigned by the Electronic Case Filing System.

at 14.  However, around March or May of 2008, when White was still unable to return to work, North Florida Sales terminated White's employment and he stopped receiving the disability checks.  See id.  Thus, at most, White received a total of $6,000 in disability payments.  After North Florida Sales terminated White's employment, he "wasn't able to work," White Depo. at 15, and his monthly expenses, not including child support, were more than $1,300.  See Claimant, Leonard Leroy White's Response to Plaintiff's First Set of Interrogatories to Claimant Leonard Leroy White (Exh. C to Motion, Doc. No. 23-3; First Response to Interrogatories) at 5.

Sometime towards the end of 2008, a man named "Shorty" called White to request that White obtain two "eight ball[s]" of cocaine for him.  See White Depo. at 25-28.[3]  An eight ball is "[w]ay less than an ounce" of cocaine.  Id. at 51.  White obtained the cocaine from another man named "Fat Boy," who brought the cocaine to White's house.  See id. at 28. Shorty came to White's house to purchase the cocaine.  See id. at 23.  A couple of days later, Shorty wanted another eight ball.  See id. at 44.  Fat Boy delivered it to White's house, and Shorty again came to White's house to purchase it.  See id.  Soon after that, Fat Boy sold White "a couple ounces or so" of cocaine, which White in turn sold to other people.  See id. at 45.  On other occasions, White purchased between two and four ounces of cocaine from Fat Boy, and then sold it to other people.  See id. at 50-51.  To discuss their drug transactions, White and Fat Boy met at a club called Cocktails.  See id. at 54, 56.  When White met with Fat Boy at Cocktails, he drove the Defendant Vehicle.  See id. at 68.  After

_____

[3]     White and Shorty knew each other from several years before because White had previously sold Shorty drugs.  See id. at 21.

discussing the details of their drug transactions at Cocktails, White would drive the Defendant Vehicle back to his house, where he would wait for Fat Boy to deliver the drugs, which White then sold to other people. See id. at 66-67, 105.

In addition, White would sometimes sell cocaine that he had purchased from his cousin to Fat Boy. See id. at 46. On at least two occasions, White obtained about nine ounces of cocaine from his cousin, which he sold to Fat Boy. See id. at 47. White also purchased a "kilo" or thirty-six ounces, of cocaine from his cousin on a couple of occasions, for a cost of between $30,000 and $33,000 per kilo. See id. at 48. White testified that he used the car accident settlement money to purchase one of the kilos of cocaine and then, with the money he got back from the sale of the first kilo of cocaine, he purchased the second kilo. See id. at 50, 77-78. Moreover, on more than one occasion, White purchased cocaine from his cousin in a quantity somewhere between nine ounces and a kilo. See id. at 48-49. All of White's drug transactions were in cash, see id. at 71, and when White purchased cocaine in quantities less than a kilogram, he paid $1,000 per ounce of cocaine, see id. at 52-53.

According to White, he did not make much of a profit on the sale of the second kilo of cocaine that he purchased. See id. at 78. Thus, he decided to take the rest of his settlement money to buy a truck. See id. White also wanted to take the rest of his settlement money out of his bank account because sometime during 2008, White began receiving letters related to his child support obligations, notifying him that his bank account was in danger of being frozen. See id. at 80, 84. White did not take all of the money out of his bank account at once. See id. at 87. On one occasion, he withdrew $13,000, intending

to purchase a truck.  See id.  However, he did not purchase the truck, and instead he put the cash in his safe at his house.  See id. at 89-90.  Subsequently, he made withdrawals of his settlement money in the amounts of $1,300, $5,000, and $5,100.  See id. at 90.

On February 27, 2009, Shorty called White to say that he was going to come by White's house.  See id. at 17.  When Shorty arrived at White's house, White sold him approximately 2.8 grams of cocaine, which he retrieved from his bedroom.  Id. at 17, 101.  At that time, Shorty was working as a confidential source for the Drug Enforcement Administration (DEA).  See id.  In exchange for the cocaine, Shorty gave White $350 of Official Authorized Funds (OAF) that Shorty had received from DEA agents.  See id. at 102.  Shorty then met Special Agents Nathan Koen and Troy Eliason as well as Task Force Officer Shawn Ferris at "a neutral location," where he gave them a recording device that he had been wearing, "$50.00 in unused DEA OAF, and two plastic bags that contained cocaine."  Declaration of Drug Enforcement Administration Special Agent Nathan Koen (Exh. A to Complaint, Doc. No. 1 at 8-11; Koen Decl.) at ¶ 5.  Then, a DEA agent obtained a search warrant for White's house.  See id. at ¶ 6.  Prior to the search warrant being executed, Task Force Officer David McMinn saw White leave his house in the Defendant Vehicle.  See id. at ¶ 7.  "DEA Jacksonville Agents and Task Force Officers arrested WHITE at the Fisherman's Dock located at 730 Park Ave, Orange Park, Florida."  Id.  After arresting him, the agents searched White and the Defendant Vehicle.  See id.  The agents found "a 9mm Berretta pistol bearing serial number BER338412Z, with a laser sight . . . between the driver's seat and the middle console."  Id. at ¶ 8.  Additionally, the officers found $2,111 on White's person, $350 of which "was identified as DEA OAF utilized in the purchase of

cocaine from WHITE earlier that day." Id.  The officers seized the remaining $1,761, see id., which is part of the currency at issue in the instant action.  After Koen  provided White with a Miranda warning, White stated that Fat Boy had supplied him with the cocaine that White had sold to Shorty earlier that day.  See id. at ¶ 9.

Later that day, the DEA agents took White and the Defendant Vehicle to White's house to execute the search warrant.  See id. at ¶ 10.  A drug-detection dog also arrived on the scene.  See id.  The dog "gave a positive indication on the passenger side door of the defendant vehicle," id.; see also Claimant, Leonard Leroy White's Response to Plaintiff's First Request for Admissions (Exh. B to Motion, Doc. No. 23-2 at 5-6; Response to Request for Admissions) at ¶ 6, but the agents did not find any drugs inside the Defendant Vehicle.  Inside White's house, the dog "gave positive indications in the master bedroom and the master bedroom closet."  Koen Decl. at ¶ 10.  There was a locked safe in the closet of the master bedroom, and White advised the agents how to unlock it.  See Response to Request for Admissions at ¶ 7.  The agents found approximately two hundred and twenty (220) grams of cocaine and $8,047, the remainder of the currency at issue in this action, in the safe.  See Koen Decl. at ¶ 11; Response to Request for Admissions at ¶ 7.  The agents also found approximately eighty (80) grams of cocaine elsewhere in the master bedroom.  See Koen Decl. at ¶ 11.  Additionally, the agents recovered scales, sandwich bags, and two guns during the search.  See White Depo. at 69-70.

White subsequently pled guilty to state drug trafficking charges, and received a forty-two month prison sentence.  See id. at 8-9.

III.    **Discussion**

A.    **Summary Judgment Standard**

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[4]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."  Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

---

[4]   Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

B.   **Analysis**

1.   **Standing**

As a threshold matter, an individual challenging a civil forfeiture action "must first demonstrate an interest in the seized property sufficient to satisfy the court of his or her [Article III] standing as a claimant." See United States v. Twenty (20) Cashier's Checks, Having the Aggregate Value of Two Hundred Thousand ($200,000) Dollars in U.S. Currency, 897 F.2d 1567, 1571 (11th Cir. 1990); United States v. Sixty-Eight Thousand Five Hundred Eighty Dollars ($68,580.00) in U.S. Currency, 815 F.Supp. 1479, 1481 (M.D. Ga. 1993); see also  United States v. $38,000.00 in U.S. Currency, 816 F.2d 1538, 1543 (11th Cir. 1987).  To establish Article III standing, a claimant need not assert that he is the owner

of the seized property as a lesser property interest, such as a possessory interest in the seized property, is sufficient.  See $38,000.00 in U.S. Currency, 816 F.2d at 1544.  In the Report, Judge Klindt finds that White was in possession of the Subject Property when it was seized because: (1) the $1,761 in Defendant Currency was on White's person when he was arrested; (2) the $8,047 in Defendant Currency was in White's house in a locked safe; and (3) White purchased the Defendant Vehicle.  See Report at 14.  As such, Judge Klindt concludes that White has standing to contest the instant forfeiture action.  See id.  After de novo review, the Court agrees.  See $38,000.00 in U.S. Currency, 816 F.2d at 1544.

### 2.      Forfeitability of the Subject Property

Once the claimant establishes that he has Article III standing, the burden shifts to the United States to prove by a preponderance of the evidence that the seized property is subject to forfeiture.[5]  See 18 U.S.C. § 983(c)(1).  A preponderance of the evidence means that the United States "must present an amount of evidence sufficient to persuade the court that the claim or contention is more likely true than not true."  See United States v. 4 Meadowbrook Lake Condominium, Unit 308, Condominium #8, Located at 314 SE 10th Street, Dania, Florida 33004, No. 06-60079-CIV-COHN/SNOW, 2007 WL 809681, at *3 (S.D. Fla. March 15, 2007) (citing Eleventh Circuit Pattern Jury Instructions, Civil (2000), Basic Instruction 6 .1, Burden of Proof).  Property subject to forfeiture includes all moneys given or intended to be given in exchange for illegal drugs, the proceeds of such an exchange, and all moneys used or intended to be used to facilitate a violation of the drug

---

[5]      Prior to the enactment of the Civil Asset Forfeiture Reform Act of 2000, the United States was required to only establish probable cause to believe that the defendant property was subject to forfeiture.  See United States v. $26,620.00 in U.S. Currency, No. Civ. A. 2:05CV50WCO, 2006 WL 949938, at * 8 (N.D. Ga. April 12, 2006).

laws. See 21 U.S.C. § 881(a)(6).  In addition, "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of . . . [controlled substances]" are also subject to forfeiture.  See 21 U.S.C. § 881(a)(4).  "To obtain civil forfeiture, the government must establish by a preponderance of the evidence 'a substantial connection between the property and the offense.'" United States v. $291,828.00 in United States Currency, 536 F.3d 1234, 1237 (11th Cir. 2008) (quoting 18 U.S.C. § 983(c)(1) and (3)).  To meet its burden, "[t]he government 'may use both circumstantial evidence and hearsay,' and the district court should evaluate the evidence presented with 'a common sense view to the realities of normal life.'" Id. (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1440 (11th Cir. 1991)).  In addition, "[t]he government may . . . use evidence gathered after the filing of the complaint for forfeiture to meet its burden." Id.

Once the government has demonstrated that the seized property is subject to forfeiture, "the burden of proof shifts to the claimant[] to show, by a preponderance of the evidence, that the property is not subject to forfeiture." United States v. Cleckler, 270 F.3d 1331, 1334 (11th Cir. 2001).  "The claimant may meet this burden either by rebutting the government's evidence or by showing that the claimant is an innocent owner."[6] Id.

---

[6]    An "innocent owner" is defined as an owner who "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property."  See 18 U.S.C. § 983(d)(2).  As Judge Klindt found in the Report, White has not asserted that he is an innocent owner of the Subject Property, and the facts in this case would not support such a finding.  See Report at 12-13.  Thus, the Court confines its analysis to whether there is a material issue of fact with regard to the forfeitability of the Subject Property.

### a.    The Defendant Currency

In the Report, Judge Klindt finds that: (1) White was in possession of a large amount of cash when he was arrested, <u>see</u> Report at 16-17; (2) White commingled the $1,761 in Defendant Currency with the $350 in DEA OAF that he received from Shorty in exchange for cocaine on the day of his arrest, <u>see</u> <u>id.</u> at 17; (3) White was storing the $8,047 in Defendant Currency in the safe in his house in close proximity to cocaine, and White conducted cash drug transactions at his house, <u>see</u> <u>id.</u>; (4) White's expenditures during the time period beginning on January 2, 2008, and ending on February 27, 2009, exceeded his legitimate income, <u>see</u> <u>id.</u> at 19; and (5) "White has an undisputed history of illegal drug transactions," <u>id.</u>  Based on these findings, Judge Klindt concludes that the United States has shown that the Defendant Currency is subject to forfeiture by a preponderance of the evidence. <u>See</u> <u>id.</u> at 20.  Additionally, Judge Klindt concludes that White has failed to rebut the United States' evidence. <u>See</u> <u>id.</u>  Accordingly, Judge Klindt recommends that summary judgment be granted in favor of the United States with regard to its claim that the Defendant Currency is subject to forfeiture.  <u>See</u> <u>id.</u> at 23.

Upon review, the Court agrees that the United States has established that the Defendant Currency is subject to forfeiture.  First, the Court notes that the mere presence of a large amount of cash in White's possession, a total of $10,158, consisting of the $2,111 found on his person and the $8,047 found in the safe in his house, is probative evidence that the Defendant Currency is connected to narcotics trafficking.  <u>See</u> <u>United States v. 183,791.00 in U.S. Currency</u>, 391 Fed. App'x 791, 795 (11th Cir. 2010) (quoting <u>United States v. $121,000.00 in U.S. Currency</u>, 999 F.2d 1503, 1507 (11th Cir. 1993) ("Although

a large amount of cash alone is insufficient to meet the government's burden, it is 'highly probative of a connection to some illegal activity.'"); United States v. $242,484.00, 389 F.3d 1149, 1161 (11th Cir. 2004) (internal citation omitted) (reasoning that although the quantity of the defendant currency, $242,484, "alone is not enough to connect it to illegal drug transactions, it is a significant fact and weighs heavily in the probable cause calculus"); United States v. $26,620.00 in U.S. Currency, No. 2:05-cv-50-WCO, 2006 WL 949938, at *7 (N.D. Ga. Apr. 12, 2006) (the presence of a large amount of currency is "strong evidence of narcotics trafficking"); United States v. $2,361.00 in U.S. Currency, More or Less, No. 88 Civ. 5347 (PNL), 1989 WL 135257, at *2 (S.D.N.Y. Oct. 31, 1989) (finding that $2,361.00 found in a drug-trafficker's home was probative evidence of illegal drug activity).  It is well established that drug traffickers usually deal in cash.  See $183,791.00 in U.S. Currency, 391 Fed. App'x at 795.  Indeed, the Eleventh Circuit has noted that "[o]ne would be hard-pressed to encounter a dealer in narcotics who accepted a personal check or a credit card payment."  $242,484.00, 389 F.3d at 1161 (internal quotations omitted).  In this case, White conducted a cash-for-drugs transaction with an individual working with the DEA (Shorty) immediately before his arrest.  Moreover, White testified during his deposition that he engaged in multiple other illegal drug transactions, all of which were cash transactions.  See White Depo. at 71.  Thus, White's possession of $10,158 in cash on the day of his arrest suggests that the Defendant Currency is connected to his illegal drug activity.

Additionally, the close proximity of currency to illegal drugs or drug paraphernalia is probative evidence of a substantial connection between the currency and illegal drug trafficking.  See $26,620.00 in U.S. Currency, 2006 WL 949938, at *8 (citing United States

v. Ten Thousand Seven Hundred Dollars and No Cents ($10,700.00) in U.S. Currency, 258

F.3d 215, 224 (3d Cir. 2001)) ("For purposes of a civil forfeiture action, a large amount of

money found in close proximity to drugs or drug paraphernalia is evidence of drug

trafficking."); United States v. $22,991.00, More or Less, in U.S. Currency, 227 F. Supp. 2d

1220, 1233 (S.D. Ala. 2002) ("[C]ourts have recognized that, for purposes of a civil forfeiture

action, the physical location of the subject property to the drugs, at the time those items are

detected by law enforcement, is strong circumstantial evidence of narcotics trafficking.").

The $8,047 in Defendant Currency was found along with two hundred and twenty grams of

cocaine, inside a locked safe, in White's residence, in the room from which White retrieved

the cocaine he sold to Shorty on the day of his arrest.  White's residence also contained

drug paraphernalia including sandwich bags and scales utilized in the sale and distribution

of cocaine.  In addition, as noted above, White conducted cash drug transactions at his

house, including on the day that the currency was found.  These circumstances strongly

suggest a connection between the illegal drugs and the $8,047.

　　　Moreover, as Judge Klindt explained in the Report, White's expenditures over the

time period in question exceeded his legitimate income.  See Report at 18-19.  From

January 2, 2008, until February 27, 2009, when he was arrested, White had, at most, a total

of $91,000 in legitimate income, comprised of his $85,000 accident settlement and

approximately $6,000 in disability payments.  See Claim at 1; Geico Release at 1-3; USAA

Release at 1; State Farm Letter at 2-3; White Depo. at 14.  During this fourteen-month

period, White's living expenses were over $1,300 per month, totaling more than $18,000.

See First Response to Interrogatories at 5.  He also purchased the Defendant Vehicle for

$27,000.  See White Depo. at 76; Vehicle Invoice at 1.  Additionally, White made multiple purchases of cocaine.  The largest quantity of cocaine that White purchased at one time was a kilo, at a price of between $30,000 and $33,000.  See White Depo. at 48, 50.  He purchased this quantity of cocaine on at least two occasions.  See id.  According to White, although he used some of his accident settlement money to purchase one kilo of cocaine, thereafter, he used money that he received from selling the cocaine to purchase more cocaine.  See id. at 77-78.  In addition to the two kilos of cocaine, White made smaller purchases of cocaine.  Judge Klindt found that White purchased at least 37 ounces of cocaine on other occasions at $1,000 per ounce, see Report at 19, which is supported by White's testimony, see White Depo. at 44-45, 47, 48-49.  Thus, in addition to purchasing two kilos of cocaine for between $60,000 and $66,000, White also purchased at least $37,000 worth of additional cocaine during the relevant period.  As such, his total drug purchases were at least $97,000.  Accordingly, as Judge Klindt concluded, "White's expenditures exceeded his legitimate income by at least $51,000 for the relevant time period."  Report at 19.  This disparity between White's legitimate income and his expenditures suggests that the Defendant Currency was derived from White's illegal drug sales.  See generally United States v. Carrell, 252 F.3d 1193, 1201 (11th Cir. 2001) (internal quotations and citations omitted) (evidence that a claimant has "no visible source of substantial income" is probative evidence in a civil forfeiture action); United States v. $174,206.00 in U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003) ("[E]vidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income or any evidence indicating innocent ownership, satisfies the burden

imposed by the statute."); <u>United States v. $52,000.00, More or Less, in U.S. Currency</u>, 508 F. Supp. 2d 1036, 1042 (S.D. Ala. 2007) ("In civil forfeiture cases, the absence of an apparent, verifiable, or legitimate source of substantial income is probative evidence of a substantial connection to illegal activity.").

However, White contends in the Claim that the Defendant Currency came from his accident settlement. <u>See</u> Claim at 2. As noted above, White testified that he withdrew $13,000 of his settlement money from the bank, intending to purchase a truck. <u>See</u> White Depo. at 78, 79, 87, 89-90. However, he failed to purchase the truck, and instead put the cash in his safe. <u>See</u> <u>id.</u> at 89-90. In addition, White made withdrawals of $1,300, $5,000, and $5,100 of his settlement money, which he also put into his safe. <u>See</u> <u>id.</u> at 90-91. He used some of this money to pay bills. <u>See</u> <u>id.</u> at 91. According to White, the Defendant Currency totaling $9,808, comprised of the $1,761 that officers found on his person and the $8,047 found in the safe, was what remained of the settlement money that he withdrew from the bank. <u>See</u> Claim at 2. In White's response to Plaintiff's Second Set of Interrogatories to Claimant Leonard Leroy White (Doc. No. 23-4; Second Response to Interrogatories), White stated that "only the money received from his settlement was kept in the personal safe at his residence. Any and all other cash obtained or connected to the drugs found at his reidence [sic] was always kept seperately [sic] and placed in his dresser drawers."[7] Second Response to Interrogatories at 12.[8]

---

[7]     White fails to even suggest why he might keep his drug money in drawers separate from his drugs, yet keep his settlement money in the safe along with his drugs.

[8]     The Court's page number references in relation to the Second Response to Interrogatories correspond with the original page numbers in the Second Response to Interrogatories rather than the numbers
(continued...)

If White purchased no more than a kilo of cocaine at a time at a cost of $30,000, and used the proceeds from his drug sales to make subsequent drug purchases, it is theoretically possible that $9,808 remained of his settlement money on February 27, 2009, the day that the Defendant Currency was seized.   However, given that White's total purchases exceeded his legitimate income by at least $51,000 during the relevant period, White's ability to retain any of the settlement money was only possible because of his illegal drug sales.

Moreover, as Judge Klindt noted in the Report, it is undisputed that White commingled the $1,761 in Defendant Currency with the proceeds from his drug transaction with Shorty on the day of his arrest.  See Report at 17, 20 n.17.  As such, regardless of whether the $1,761 came from White's settlement proceeds, it is subject to forfeiture because "legitimate funds are forfeitable when knowingly commingled with forfeitable funds." United States v. One Single Family Residence Located at 15603 85th Ave. N., Lake Park, Palm Beach Cnty., Fla., 933 F.2d 976, 982 (11th Cir. 1991).

Additionally, as noted above, White was storing the $8,047 in currency in a safe in his house, along with two hundred and twenty grams of cocaine.   White admitted to engaging in cash drug transactions in his house, including on the day he was arrested.  And despite White's contention that he stored his drug proceeds in his dresser drawers, separate from his settlement proceeds, which he claims he stored in his safe, the DEA agents who searched White's house did not report finding cash anywhere else in the house.  If White

---

[8](...continued)
assigned by the Electronic Case Filing System.

stored his settlement proceeds separate from his drug proceeds, one would expect to find some cash elsewhere in the house.  Thus, based on the record, the Court concludes that no reasonable jury could credit White's contention that the money found in White's safe consisted solely of settlement proceeds.  See generally United States v. Two Parcels of Real Property Located in Russell Cnty., Ala., 92 F.3d 1123, 1129 (11th Cir. 1996) (claimant's testimony that she "purchased part of the defendant property for $75,000 with $100,000 she alone had saved from her $6.00 per hour job" was insufficient to raise an issue of fact as to a legitimate source of income for the purchase of the property; "[t]he mere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture"); $26,620.00 in U.S. Currency, 2006 WL 949938, at *9 ("[I]f the claimant's only evidence of a legitimate source for the seized currency is so implausible that no reasonable jury could find for claimant, the court may grant summary judgment for the government.").  Instead, it appears that to the extent that White stored money at his house, he stored all of it, including drug proceeds, in the safe in the master bedroom.  As such, even if the $8,047 in White's safe consisted in part of settlement proceeds, the entire amount is subject to forfeiture because any legitimate funds were commingled with drug proceeds.  See One Single Family Residence, 933 F.2d at 982.  For the foregoing reasons and for the reasons stated by Judge Klindt in the Report, the Court finds that the United States has carried its burden of establishing that the Defendant Currency is subject to forfeiture.

### b.  The Defendant Vehicle

Additionally, in the Report, Judge Klindt concludes that the following facts are undisputed: (1) the Defendant Vehicle was White's only vehicle during the relevant time period; (2) White drove the vehicle on the day when he engaged in a drug transaction with Shorty; (3) White was carrying $2,111 in the Defendant Vehicle, $350 of which Shorty had given him in exchange for cocaine, when White was arrested; (4) a drug-detecting dog gave a positive alert on the Defendant Vehicle; and (5) White drove the Defendant Vehicle to and from Cocktails, where he discussed arrangements for his drug transactions with Fat Boy. See Report at 21-22.  Judge Klindt further finds that this evidence is sufficient to establish a substantial connection between White's illegal drug transactions and the Defendant Vehicle by a preponderance of the evidence, and that White has failed to rebut this evidence.  See id. at 22-23.  Thus, Judge Klindt recommends that summary judgment be granted in favor of the United States with regard to its claim that the Defendant Vehicle is subject to forfeiture.  Upon de novo review, the Court agrees.  See Nnadi v. Richter, 976 F.2d 682, 686 (11th Cir. 1992) ("[A] car is considered directly involved [in an illegal drug transaction] when it is used to transport an individual to the place where a drug transaction takes place even though it is not used to transport money or drugs.").

### IV.  Conclusion

Based upon an independent examination of the record and a de novo review of the legal conclusions, the Court will adopt the Report, as supplemented herein.

In light of the foregoing, it is hereby **ORDERED:**

1.    The Report and Recommendation (Doc. No. 29) is **ADOPTED,** as supplemented herein, as the opinion of the Court.

2.    Plaintiff's Motion for Summary Judgment (Doc. No. 23) is **GRANTED**.

3.    Defendants $1,761 in United States Currency, $8,047 in United States Currency, and Mercedes CLK 320, VIN WDBTJ65JX4F094579 are forfeited to the United States of America under the provisions of 21 U.S.C. § 881 for disposition according to law.

4.    The Clerk of the Court is directed to enter **JUDGMENT** in favor of the United States of America and to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of September, 2011.


MARCIA MORALES HOWARD
United States District Judge


lc15

Copies to:

The Honorable James R. Klindt, United States Magistrate Judge

Counsel of Record

Pro Se Parties